IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES B. C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-1143-CJP[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for DIB in October 2014, alleging disability as of April 20, 2014. Plaintiff also filed an application for SSI in October 2014, alleging disability as of July 7, 2014. Plaintiff subsequently amended the disability onset date in his DIB application to July 7, 2014. After holding an evidentiary hearing,

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 11.

Administrative Law Judge (ALJ) Louis Aliberti denied both applications on May 10, 2017. (Tr. 32-41). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

> The ALJ did not adhere to 20 C.F.R. § 416.927 when he ignored evidence in his residual functional capacity (RFC) determination.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while

judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

ALJ Aliberti followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.

The ALJ found that plaintiff had severe impairments of Multiple Sclerosis (MS) and hypothyroidism.

The ALJ found that plaintiff had the RFC to perform work at the sedentary exertional level with some physical and mental limitations. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff was not able to do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1968 and was almost 46 years old on the alleged onset date. (Tr. 69). His reported height was 5'7" and his reported weight was 170

pounds. (Tr. 218). He previously worked as a truck driver, a cook, and a stocker. (Tr. 76, 199). Plaintiff submitted a function report in January 2015 stating that he had serious back pain, leg cramps, fatigue, some loss of equilibrium, and visual impairment. He stated he had difficulty walking, but did acknowledge the ability to take care of his father and pets, empty the dishwasher, vacuum floors, take out the trash, mow the lawn, wash clothes, prepare small meals, and shop for groceries. (Tr. 226-229, 231).

2. **Evidentiary Hearing**

At the evidentiary hearing, plaintiff reported that he was divorced with no children. (Tr. 54). He completed the majority of the daily household tasks, but only in 8 to 10 minute increments. (Tr. 65-66). His insurance lapsed in 2016. (Tr. 60).

Plaintiff said he could not work because of constant pain in his lower back and some additional generalized pain, for which he stayed reclined 90 percent of the day. (Tr. 55, 61). He also complained of fatigue and tiredness. (Tr. 60). Plaintiff stated that he could walk 50 feet, but would have to take a break for a minute or so afterwards before continuing to walk. (Tr. 56). He reported that he could lift a maximum of 20 pounds, could not reach, and had trouble stooping, kneeling, crouching, crawling, and bending. (Tr. 57). He also had numbness on his right side and tingling in his right hand, which he addressed by grasping and holding objects with his left hand. (Tr. 58). He noted that he could empty the dishwasher, vacuum the floors, wash clothes, grocery shop, and take care of his pet

cat. He stated he could not mow the lawn. (Tr. 58, 59).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

In July and August 2014, plaintiff saw Dr. Raed Al-Dallow, for mid sternal heaviness with radiating pain, epigastric pain, back discomfort, and radiculopathy. (Tr. 291, 298). Dr. Al-Dallow noted that plaintiff suffered from fatigue, numbness, tingling, and weakness in his extremities. (Tr. 292, 299). Plaintiff reported using marijuana, smoking, and drinking 4-6 beers with a half a pint of Southern Comfort daily. (Tr. 292, 299, 371). Dr. Al-Dallow suggested plaintiff establish care with a primary care physician and recommended one. (Tr. 291). In August 2014, plaintiff saw primary care physician Dr. John Fozard, and complained of numbness, tingling, malaise, and fatigue. (Tr. 371, 373). Dr. Fozard listed plaintiff's additional problems as cervical radiculopathy, lower back pain, lumbar radiculopathy, malaise, and neck pain. (Tr. 373). Dr. Fozard noted plaintiff's recent MRI studies showed probable demyelinating disease, most likely from MS, and referred plaintiff to a neurologist. (Tr. 347, 371- 372, 403).

In 2014 and 2015, plaintiff saw neurologist Dr. Bhargava Trivedi. In October 2014, Dr. Trivedi confirmed that plaintiff had moderate relapsing-remitting MS with an onset in July 2014 and prescribed Gilenya. (Tr. 334, 339). He observed plaintiff had gait disturbance and noted plaintiff also had hypothyroidism. (Tr. 335-336). In 2015, Dr. Trivedi noted that the status of

plaintiff's MS was relapsing on one occasion and stationary on two other occasions. (Tr. 397, 453, 611, 618). He also reported no active demyelinating disease in his MRI, along with other unremarkable labs and exams, and only one new neurological deficit, which occurred before starting Gilenya. (Tr. 607-608, 611).

Specifically, the MRI of the cervical spine Dr. Trivedi was referring to revealed "T2 demyelinating lesions at the C3-C4 level," but the findings were "not associated with enhancement and active inflammation." (Tr. 552). A later cervical spine MRI found no new lesions. (Tr. 545). Additional brain MRIs in 2015 and 2016 showed demyelinating plaques and lesions affecting the supratentorial white matter and brainstem. The 2015 MRI noted no "evidence of restricted diffusion or signs of enhancement seen within the brain on postcontrast images." The 2016 MRI noted resolved "left frontal enhancing plaque with no features of active demyelination currently." (Tr. 547, 625).

Dr. Trivedi also delineated plaintiff's complaints, including fatigue; neck pain; low and mid-back pain, which sometimes went around his waist; bilateral leg pain; slow and impaired gait; and depression. Plaintiff further reported falling out of bed once from an imbalance. Dr. Trivedi instructed plaintiff to stop smoking and drinking alcohol on several occasions and stated that plaintiff's main interest appeared to be getting disability rather than receiving treatment for MS. (Tr. 607-608).

Plaintiff saw Dr. Adrian Feinerman, a state agency consultant, in February 2015 for an examination. (Tr. 468). Dr. Feinerman found that plaintiff had

normal grip strength, normal muscle strength, normal range of motion, normal ambulation, normal reflexes, and a negative straight leg test. (Tr. 473-474). He also found the plaintiff's fine and gross hand manipulation were normal. (Tr. 473). Dr. Feinerman additionally stated that plaintiff was able to sit, stand, walk, hear, speak, lift, carry, handle objects, and can handle funds on own behalf. He did, however, note plaintiff's subjective complaint of lower back pain. (Tr. 474). He further remarked that plaintiff reported cutting his alcohol consumption to six beers per month, but still smoked half a pack of cigarettes per day and used marijuana the week prior. (Tr. 469).

Later in February 2015, acting as a state agency consultant, Dr. Lenore Gonzalez assessed plaintiff's RFC based on a review of the file contents. (Tr. 69-77). Dr. Gonzalez diagnosed plaintiff with MS and a thyroid impairment and concluded plaintiff was not disabled. (Tr. 72, 77). She found plaintiff could perform light work; occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk a total of 6 hours in an 8 hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and avoid exposure to extreme cold, extreme heat, and vibration. (Tr. 72-76). In June 2015, acting as a state agency consultant, Dr. Hemantha Surath also assessed plaintiff's RFC based on a review of the file contents. (Tr. 89-99). Dr. Surath found that plaintiff was not disabled and could perform light work, but differed from Dr. Gonzalez, stating that plaintiff could sustain unlimited exposure to extreme temperatures. (Tr. 95-96).

In January 2017, Dr. Fozard noted that Dr. Trivedi resigned from his practice and moved to another state, necessitating another neurologist for plaintiff. At the time, Dr. Fozard acknowledged plaintiff's chronic pain problems and listed the course of plaintiff's MS as stable and nonprogressive. He also discussed plaintiff's smoking and alcohol use, stating that plaintiff still smoked a half a pack per day and denied trying to cut down on his drinking, going so far as to say plaintiff consumed an "eye opener" drink in the morning. (Tr. 481, 483). A referral for medical marijuana was initiated by a peer of Dr. Fozard's. (Tr. 493). Plaintiff later saw an acute care nurse practitioner at Cape Neurology Specialists in November 2016 and scheduled a follow up. (Tr. 627).

## Analysis

Plaintiff argues that ALJ Aliberti ignored evidence in his RFC findings. Although not entirely clear, it appears that plaintiff's first specific contention is that the ALJ ignored pieces of Dr. Trivedi's opinion. A treating physician's opinion is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a good reason for the rejection. *Ibid.* However, an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence" in order to build a logical bridge from the evidence to his conclusion. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Further, the determination of a

claimant's RFC is a matter for the ALJ alone. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014).

The Achilles' heel in plaintiff's argument here is a simple one: the ALJ's sound reasoning in addressing the breadth of medical opinions in this case. Regarding Dr. Trivedi's opinion, the ALJ started out by identifying Dr. Trivedi's diagnosis of plaintiff with relapsing-remitting MS. The medical records themselves reveal the symptomatic impetus for the condition's name, with plaintiff going from relapsing status to stationary status in Dr. Trivedi's notes. The ALJ recited Dr. Trivedi's notes well, stating that plaintiff was "stable and non-progressive," while also detailing ongoing back and leg pain, fatigue, gait disturbance, some pulmonary abnormality, and a varying degree of numbness.[4] The ALJ also mentioned plaintiff's progress on the medication Gilenya as stable. He even discussed plaintiff's fall out of bed. Additionally, in the notes of both Dr. Trivedi and the nurse practitioner, plaintiff's MS was described as mild, a fact that the ALJ also chose to highlight in his opinion.

The second point of plaintiff's argument, that the ALJ inaccurately summarized plaintiff's MRIs and even left out others, bleeds into the first point and, on review, eventually reinforces the ALJ's analysis of these opinions. For all of the notes in plaintiff's several MRI's, a general picture emerges that plaintiff's MS was

---

[4] The Court emphasizes that the ALJ did find that plaintiff suffered from fatigue. "Fatigue is one of the most common symptoms of MS." National Multiple Sclerosis Society, http://www.nationalmssociety.org/Symptoms-Diagnosis/MS-Symptoms/Fatigue (last visited March 14, 2019). That plaintiff suffered from fatigue as a common symptom of MS, however, tells nothing about how the symptom is debilitating for the plaintiff, or how it affects his ability to maintain competitive employment with sedentary limitations.

stable, as in not advancing. Plaintiff did have demyelinating plaques and lesions, but Dr. Trivedi stated that there was no active demyelinating disease, no "enhancement and active inflammation," and no "evidence of restricted diffusion or signs of enhancement" in reviewing the MRIs. While it is true that ALJ's may not "cherry-pick" evidence that backs up their contention, while also ignoring other evidence that is inconvenient, that did not happen here. In no piece of the record does an MRI show new lesions or advancing demyelination after plaintiff started treatment on Gilenya, as plaintiff contends. In other words, there was no new or continuing damage to plaintiff's neurological system beyond what was already damaged. The fact that the ALJ did not discuss every one of the MRIs in the record is irrelevant in this case because the MRIs do not undercut his conclusion.

Further, the ALJ used plaintiff's deficits, which are indeed serious, to come to a determination from his RFC that plaintiff was limited to sedentary work. Sedentary work is defined by the Guidelines in terms of the strength requirements of the job, described in the regulations as physical exertion or exertional requirements. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a) (1983). The ALJ determined that plaintiff's residual functional capacity was lower than the state medical examiners' findings, with each state medical consultant finding plaintiff capable of performing light work after

reviewing plaintiff's medical records. Although Dr. Feinerman did not arrive at a conclusion as to plaintiff's work-related capacity, his findings appear to be in line with the state agency examiners. Plainly stated, no error exists when there is "no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). That is the case here.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Aliberti committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: March 14, 2019.**

                                         **s/ Clifford J. Proud**
                                         **CLIFFORD J. PROUD**
                                         **UNITED STATES MAGISTRATE JUDGE**